U.S. DIST.... COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2021 JAN 26  PM 3: 38

CLERK

BY_____
DEPUTY CLERK

SUSAN B.,                              )
        Plaintiff,                     )
                                       )
    v.                                 )    Case No. 2:19-cv-00080
                                       )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
        Defendant.                     )

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE DECISION OF THE COMMISSIONER AND DENYING THE COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 11 & 15)

Plaintiff Susan Luthera Brown is a claimant for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that she is not disabled.[1] (Doc. 11.) The Commissioner moves to affirm. (Doc. 15.) Plaintiff replied on February 5, 2020, at which time the court took the pending motions under advisement.

After her applications for DIB and SSI were denied initially and on reconsideration by the Social Security Administration, Administrative Law Judge ("ALJ") Thomas Merrill found Plaintiff was ineligible for benefits based on his conclusion that Plaintiff can perform jobs that exist in significant numbers in the national

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

economy and was therefore not disabled between the alleged onset date of September 27, 2012 through February 20, 2019, the date of his decision.

Plaintiff identifies four errors in the disability determination: (1) the ALJ failed to comply with the Appeals Council's remand order; (2) the ALJ erred in finding Plaintiff's reflex sympathetic dystrophy ("RSD"), complex regional pain syndrome ("CRPS"), carpal tunnel syndrome, and right and left knee disorders were non-severe impairments; (3) the ALJ did not give proper weight to the opinions of treating physician Richard Baker, MD; and (4) the ALJ's Residual Functional Capacity ("RFC") assessment is not supported by substantial evidence. Plaintiff seeks a remand for the calculation of benefits.

Plaintiff is represented by Elaine Bodurtha, Esq. The Commissioner is represented by Special Assistant United States Attorney Maria Fragassi Santangelo.

## I.    Procedural History.

Plaintiff filed her initial application for DIB on April 17, 2014, alleging a disability onset date of September 27, 2012 and identifying the following disabling conditions: RSD, plantar fasciitis of her right foot, Achilles tendonitis, tarsal tunnel syndrome, depression, Posttraumatic Stress Disorder ("PTSD"), sleep apnea, high cholesterol, sciatica, and migraines. Her claim was denied on September 5, 2014 and was denied again upon reconsideration on December 30, 2014. Plaintiff timely filed a request for a hearing, which was held before ALJ Merrill via videoconference on April 20, 2016. Plaintiff appeared in person and was represented by counsel. Both Plaintiff and Vocational Expert ("VE") James T. Parker testified.

On August 3, 2016, ALJ Merrill issued an unfavorable decision. Plaintiff timely filed an administrative appeal. The Appeals Council denied review on June 26, 2017. Plaintiff subsequently appealed the ALJ's decision to this court in August 2017. She also filed her second application for DIB and her first application for SSI on August 11, 2017. On March 8, 2018, this court remanded Plaintiff's case pursuant to the Commissioner's Sentence Four motion.

On August 31, 2018, the Appeals Council vacated ALJ Merrill's August 3, 2016 decision and remanded Plaintiff's case for further consideration of her mental

2

impairments and medical opinion evidence. In doing so, Administrative Appeals Judge
("AAJ") Donna Calvert determined "[f]urther consideration of the claimant's mental
impairment is required" because the ALJ assigned substantial weight to state agency
medical consultant opinions that were authored "before the only formal psychological
examination was available and before [Plaintiff] began receiving regular mental health
treatment in January 2015." (AR 1535) (record citations omitted). AAJ Calvert observed
that subsequent evidence indicated Plaintiff presented as anxious and had moderate social
functional limitations. She further noted that Plaintiff had night terrors and nightmares
stemming from an abusive marriage resulting in a diagnosis of PTSD.

With regard to the ALJ's assessment of the opinions of Dean Mooney, PhD, AAJ
Calvert found:

> Dr. Mooney diagnosed claimant with PTSD and Dependent Personality
> Disorder, stated that claimant clearly met the diagnostic criteria for PTSD
> and that she tended to go over her trauma, which was likely to be
> overwhelming. The [ALJ] found Dr. Mooney's report unpersuasive, in part,
> because he examined the claimant on only one occasion and appeared to
> base the opinion on the claimant's subjective statements. However, the
> [ALJ's] decision gave significant weight to the State agency medical
> consultant opinions, all of whom did not examine the claimant even once
> and the decision also relied on portions of Dr. Mooney's opinion despite
> the fact that Dr. Mooney saw the claimant only once. Moreover, Dr.
> Mooney conducted a battery of tests in addition to the clinical interview.
> Further evaluation of the severity of the claimant's mental impairments is
> warranted.

*Id.* (record citations omitted).

On remand, AAJ Calvert ordered ALJ Merrill to: (1) obtain additional evidence
regarding Plaintiff's mental impairments, including, if warranted, a consultative mental
status examination and additional medical source opinions; (2) give further consideration
to the medical opinion evidence; (3) evaluate the claimant's mental impairments "in
accordance with the special technique described in 20 CFR 404.1520a, documenting
application of the technique in the decision by providing specific findings and appropriate
rationale for each of the functional areas described in 20 CFR 404.1520a(c)[,]" *id.*; (4)
give further consideration to Plaintiff's maximum RFC and provide a rationale for it

3

including specific references to the record; and (5) give further consideration to whether
Plaintiff can perform past relevant work.

AAJ Calvert consolidated Plaintiff's 2014 and 2017 applications for DIB and SSI
and ordered ALJ Merrill to offer Plaintiff the opportunity for a new hearing as well as an
opportunity to address the evidence submitted to the Appeals Council. ALJ Merrill held a
second hearing via videoconference on January 16, 2019. Plaintiff appeared in person and
was represented by counsel. Both Plaintiff and VE Lynn Balsam testified. On February
20, 2019, ALJ Merrill issued an unfavorable decision. Because Plaintiff did not appeal to
the Appeals Council, the ALJ's disability determination stands as the Commissioner's
final decision.

## II.    ALJ Merrill's February 20, 2019 Decision.

In order to receive DIB or SSI under the SSA, a claimant must be disabled on or
before the claimant's date last insured. A five-step, sequential-evaluation framework
determines whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a
> "residual functional capacity" assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy
> that the claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R.
§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability
within the meaning of the Act, and bears the burden of proving his or her case at [S]teps
[O]ne through [F]our of the sequential five-step framework established in the SSA
regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation
marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to
show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150

(alterations in original) (internal quotation marks omitted).

ALJ Merrill determined Plaintiff met the SSA's insured status requirements through June 30, 2018. At Step One, he found Plaintiff had not engaged in substantial gainful activity since September 27, 2012, the alleged onset date. At Step Two, he concluded Plaintiff had the following severe impairments: degenerative disc disease, obesity, depression, personality disorder, and PTSD. Although the ALJ noted Plaintiff's medical records contained diagnoses of bilateral carpal tunnel syndrome, right knee pain, left shoulder pain, sleep apnea, right RSD, and CRPS, he found these impairments to be non-severe because Plaintiff pursued conservative treatment regimens; Plaintiff reported improvement over time; or there was insufficient evidence of severity during the period of alleged disability. For Plaintiff's RSD and CRPS, the ALJ concluded "there is no evidence that [they] would result in greater limitations than those included in" her RFC. (AR 1459.)

At Step Three, ALJ Merrill found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. For Plaintiff's degenerative disc disease, the ALJ observed that Plaintiff's medical record did not reveal any compromise of a nerve root or the spinal cord, nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.

The ALJ acknowledged that, at the time of the hearing, Plaintiff was five feet three inches tall and weighed 303 pounds, which resulted in a body mass index ("BMI") of 53.7 and is consistent with Level III obesity pursuant to Social Security Ruling 02-1p for "morbid obesity." He, however, concluded that Plaintiff's RFC "incorporates the consideration given to the impact of obesity on the claimant's functional limitations." *Id.* at 1461. The RFC, however, contains no mention of obesity related limits. With respect to Plaintiff's mental health impairments, the ALJ determined Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintenance of pace; and adapting to her environment.

At Step Four, ALJ Merrill determined Plaintiff had the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except the claimant can lift twenty pounds occasionally and ten pounds
> frequently. The claimant can stand/walk for six hours and sit for six hours
> in an eight-hour workday. The claimant has an unlimited use of hands and
> feet to push/pull and operate controls. The claimant can occasionally climb
> ladders, scaffolds, [and] ropes as well as frequently crawl or climb stairs
> and ramps. The claimant requires a three[-]to[-]five minute break every
> hour. The claimant is limited to understanding, remembering, and carrying
> out simple tasks with [the] ability [to] concentrate[,] persist[,] and pace
> typical two hour periods of an eight-hour workday and forty-hour
> workweek. The claimant can tolerate ordinary and routine social
> interactions with coworkers and supervisors as well as brief and routine
> social interaction with the general public. The claimant can tolerate simple
> changes in tasks expectations, avoid hazards, travel, and set goals.

*Id.* at 1463.

In light of her RFC, ALJ Merrill concluded Plaintiff could not perform her past relevant work as described and as performed generally in the economy, including her work as an assistant retail manager, customer service representative, and receptionist. Although Plaintiff was forty-three as of her alleged onset date, placing her in the "younger" category as defined by the regulations, the ALJ noted that, since filing her applications, Plaintiff had changed age categories to "approaching advanced age[.]" *Id.* at 1475.

Considering Plaintiff's age, high school education, work experience, and RFC, ALJ Merrill determined at Step Five that jobs exist in significant numbers in the national economy which she could perform including merchandise marker, office helper, and inspector and hand packager. As a result, ALJ Merrill concluded Plaintiff was not disabled from September 27, 2012 through February 20, 2019, the date of his decision.

## III.   Conclusions of Law and Analysis.

### A.   Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal

standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts and determines credibility issues, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

### B. Whether the ALJ Erred in Failing to Comply with the Appeals Council's Remand Order.

On February 4, 2016, Dr. Mooney completed a Psychological Evaluation in which he opined that Plaintiff's global cognitive abilities fell in the average range of functioning. He noted that Plaintiff had "some clear difficulties using language" which affected her ability to effectively communicate with others and that she could "take in verbally presented information" but would "likely require things to be repeated, or to be cued in some other way." (AR 1401.) He found that Plaintiff experiences "a moderate to severe level of emotional distress characterized by dysphoria, brooding, and agitation[,]" and that she had "difficulty thinking and her concentration [was] poor." *Id.* at 1400. Dr. Mooney opined that Plaintiff met the diagnostic criteria for PTSD and that "[s]he tends to go over her trauma, likely in an attempt to understand and master her pain." *Id.* at 1402. He found that Plaintiff "would likely be unsuccessful at a job until she can stop being so triggered" and that, after seeking appropriate treatment for PTSD, Plaintiff might be "able

7

to appropriately be around people without a sense of hypervigilance and panic." *Id.* Dr. Mooney opined that Plaintiff "should not hold job positions that require her to speak with customers, read, or access information from manuals." *Id.* The Appeals Council found that ALJ Merrill failed to correctly assess Dr. Mooney's opinions and ordered him to reconsider that opinion and obtain additional evidence if he needed it.

Notwithstanding the Appeals Council's remand order, at Step Four, ALJ Merrill again gave "limited weight" to Dr. Mooney's opinion because it was "inconsistent with the record as a whole." (AR 1469.) He again noted that Dr. Mooney's opinion was based on a single examination and that it was inconsistent with "primarily benign mental status examinations, [the] conservative nature of [Plaintiff's] treatment, and treatment notes reflecting no more than moderate functional limitations related to [Plaintiff's] mental impairments." *Id.* ALJ Merrill emphasized the "conservative treatment" of Plaintiff's mental impairments despite acknowledging that she received medication management for these conditions and regularly participated in individual therapy sessions. He noted that Plaintiff never reported to the emergency room due to symptoms associated with her mental impairments nor was she psychiatrically hospitalized, however lack of hospitalization does not render a mental health treatment plan conservative. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 2020 WL 7022236, at *5 (D. Ariz. Nov. 30, 2020) (noting that "[d]efendant appears to be arguing that anything short of in-patient hospitalization for a mental disorder is considered 'conservative treatment,' but does not cite any case law for this proposition").

The ALJ also cited treatment notes of Plaintiff's therapist Adelaid J. Salley, LICSW which describe Plaintiff as frequently anxious and depressed but well-groomed, cooperative, and fully oriented with intact insight, judgment, and cognition. The ALJ noted that these treatment notes describe Plaintiff as having no more than moderate functional impairments.[2] Those same treatment notes demonstrate that, consistent with

---

[2] *See, e.g.*, AR 1105 (at July 14, 2015 session noting that impairments in Plaintiff's ability to sleep, engage in routine activities, and socialize were "moderate"); AR 2447 (at July 27, 2016 session, noting the same); AR 2786 (at May 23, 2018 session noting that Plaintiff's functional

Dr. Mooney's assessment, Plaintiff continued to experience panic attacks, night terrors, and nightmares over the past five years and continued to be easily triggered by common things such as loud noises, gestures, certain male names, and facial expressions.[3]

The ALJ noted that Dr. Mooney's report was inconsistent with the functional assessments of state agency consultants Joseph Patalano, PhD ("Dr. Patalano") and Howard Goldberg, PhD ("Dr. Goldberg") who opined that Plaintiff had the ability to (1) understand, as well as the memory for, simple one-to-three step tasks and simple and repetitive complex instructions; (2) sustain concentration, persistence, and/or pace over an eight-hour workday and typical work week, although her symptomology could episodically limit her capacity to sustain concentration; (3) manage routine interaction with coworkers and supervisors that was not repetitive or high demanding, and was limited from dealing with the public; and (4) travel, set goals, and manage safety, although she might need some assistance with significant changes in task expectations. For this reason, the ALJ rejected Dr. Mooney's recommendation that Plaintiff avoid positions that required her "to speak with customers, read, or access information from manuals." (AR 1402.)

The Appeals Council's remand order criticized the ALJ's previous decision to accord "great weight" to the opinions of non-examining consultants because they were consistent with the objective medical evidence and because Drs. Patalano and Goldberg had an opportunity to review much of the medical record, including the opinions and

---

impairment with regard to family life/life skills/home responsibilities was "moderate").

[3] *See, e.g.*, AR 1916 (at a November 29, 2017 session noting that Plaintiff reported she was afraid of "getting in the car"); AR 1935 (at October 6, 2017 session noting that Plaintiff had a moderate sleep impairment because she had "frequent night terrors and nightmares"); AR 2372 (at March 17, 2016 session noting that "a door was slammed in the office" which caused Plaintiff to "bec[o]me triggered, sending her into a flashback"); AR 2451 (at an August 10, 2016 session noting that Plaintiff had a flashback triggered by a man "mumbling quietly and wa[v]ing his arms."); AR 2537 (at a May 10, 2017 session noting that Plaintiff had a flashback after "receiving a call from a collections agency about an outstanding Verizon Wireless bill that Tom Brown was supposed to have paid"); AR 2569 (at a January 11, 2018 session, noting that Plaintiff planned to ask her physical therapist to take his name tag off because his name was Tom and "[s]taring at his name tag doesn't help").

examination findings of Dr. Mooney. The ALJ nonetheless essentially reached the same conclusion which the Appeals Council rejected. In doing so, he made the same factual error identified by the Appeals Council. Drs. Patalano and Goldberg were non-examining sources who did not consider the November 2018 Medical Source Statement of Dr. Baker or any other objective medical evidence submitted after February 2018. Dr. Patalano cited ALJ Merrill's 2016 decision in support of his opinion even though that opinion was vacated by the Appeals Council. Dr. Goldberg did not address Dr. Mooney's assessment at all.

In giving little weight to the opinion of Dr. Mooney and great weight to the opinions of Drs. Patalano and Goldberg, the ALJ failed to comply with the Appeals Council's remand order. He again "found Dr. Mooney's report unpersuasive, in part, because he examined the claimant on only one occasion" but "gave significant weight to the State agency medical consultant opinions, all of whom did not examine the claimant even once[.]" (AR 1535.) "The ALJ's failure to comply with the Appeals Council's order constitutes legal error and necessitates a remand." *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009); *see also Ellis v. Colvin*, 29 F. Supp. 3d 288, 299 (W.D.N.Y. 2014) (holding that "[t]he failure of an ALJ to abide by the directives in an Appeals Council remand order constitutes legal error requiring remand.") (citations omitted).

## C.    Whether the ALJ Erred at Step Two in Finding Plaintiff's RSD, CRPS, Carpal Tunnel Syndrome, Right Knee Pain, and Left Shoulder Pain Were Not Severe Impairments.

Plaintiff argues that ALJ Merrill erred at Step Two by determining that Plaintiff's RSD/CRPS, carpal tunnel syndrome, and right knee and left shoulder pain were not severe impairments. The Second Circuit has repeatedly held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre*, 758 F.3d at 151; *see also Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (agreeing with the Supreme Court and sister circuits that "Step Two may do no more than screen out *de minimis* claims") (citing *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring)). An

10

impairment or combination of impairments is "severe" at Step Two if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). In contrast, an impairment is "not severe" if the medical evidence clearly establishes it has no more "than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities[.]" SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985); *accord* SSR 96-3p, 1996 WL 374181, at *1-2 (July 2, 1996); *see also James C. v. Comm'r of Soc. Sec.*, 2020 WL 103813, at *4 (D. Vt. Jan. 9, 2020) ("An impairment is 'not severe' when medical evidence establishes 'only a slight abnormality . . .[,] which would have no more than a minimal effect on [the claimant's] ability to work.'") (alterations in original) (quoting SSR 85-28, 1985 WL 56856, at *3).

Whether an impairment is "severe" also has a durational component. "Unless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least [twelve] months." 20 C.F.R. § 404.1509."It is the [Plaintiff's] burden to show at step two that [s]he has a 'severe' impairment or combination of impairments[.]" *James C.*, 2020 WL 103813, at *4.

The ALJ noted that Plaintiff had been diagnosed with right RSD/CRPS and that in a 2012 examination, her right foot was swollen, discolored, and cold to touch. It was recommended that Plaintiff pursue treatment with a sympathetic nerve block, but there is no evidence that Plaintiff received this treatment. Plaintiff participated in physical therapy, which she reported was helpful in managing her pain. Thereafter, she did not exhibit generalized swelling or edema in her extremities and her gait was either normal or only slightly antalgic.

Plaintiff contends that she consistently reported severe pain which limits her ability to stand/walk, but as the ALJ points out, there is no evidence that Plaintiff received further treatment related to these diagnoses until December 2018, at which time it was noted that Plaintiff had "signs and symptoms of CRPS" but had 5-/5 strength in her upper and lower extremities. (AR 2882.) The ALJ correctly stated that "the [Plaintiff's] own reports regarding improvement in her right foot pain, the lack of evidence of consistent treatment related to these conditions during the relevant period, and

11

examinations noting the claimant to have primarily normal strength, no generalized swelling, and a normal to only slightly antalgic gait support a finding that this impairment is nonsevere." (AR 1459.) Consequently, the ALJ's finding that Plaintiff's RSD/CRPS was a non-severe impairment at Step Two was supported by substantial evidence.

With regard to Plaintiff's carpal tunnel syndrome ("CTS") diagnosis, the ALJ noted that a March 2017 electromyography and nerve conduction study revealed mild median mononeuropathy across the claimant's wrist suggestive of CTS. Although Plaintiff was assessed in 2013 to have a positive Tinel's sign at the carpal canal and "slightly altered median nerve sensibility[,]" she was noted to have "5/5 thenar strength"[4] and full range of motion. (AR 845.) Plaintiff received injections to treat her CTS and reported that the injections "provided her good relief[.]" (AR 842.) Treatment notes from Ann Stein, MD dated July 5, 2018, indicate that after receipt of an injection, Plaintiff's CTS on the right was "95% better and has not recurred" and that "[t]he only time she has symptoms [on the left] is when she is doing one exercise which she does for her shoulders." (AR 2733.)

Plaintiff argues that her choice of conservative treatment, without more, cannot provide substantial evidence that she is not disabled, however the ALJ found that "the *combination* of the generally conservative nature of [Plaintiff]'s treatment for this condition combined with examinations showing the [Plaintiff] to have intact muscle bulk, tone, and strength at the thenar as well as intact coordination support a finding that this condition does not result in more than a minimal work related limitation and thus, it is a nonsevere impairment." (AR 1458) (emphasis supplied). Because this determination was supported by substantial evidence, it cannot be disturbed.

At Step Two, ALJ Merrill also considered whether Plaintiff's right knee and left shoulder pain were severe impairments and decided they were not. Plaintiff points out that she received diagnoses relating to these impairments but makes no argument that her

---

[4] Thenar is a term "applied to any structure in relation with the base of the thumb or its underlying collective components." Stedman's Medical Dictionary (2014), *available at* Westlaw STEDMANS 911890.

limitations were not reflected in her RFC. "[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (internal quotation marks and citation omitted). Assuming *arguendo* that the ALJ erred in finding that these impairments were not severe, a remand is not warranted where the ALJ "identifies some severe impairments at Step [Two], and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe[.]" *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 278 (W.D.N.Y. 2018) (second and third alterations in original) (quoting *Snyder v. Colvin*, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014)).

In this case, ALJ Merrill found that Plaintiff's RSD/CRPS, CTS, and knee and shoulder pain were not severe but considered those impairments in the remaining steps of the sequential disability analysis. Any error in finding these impairments were not severe was therefore harmless. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (holding ALJ's error in finding certain conditions were not severe at Step Two was harmless because impairments were "specifically considered" in "subsequent steps") (summary order); *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 297 (W.D.N.Y. 2016) ("Courts have held that error at [S]tep [T]wo in determining the severity of impairments is harmless if the ALJ finds at least one other severe impairment and continues through the sequence of the disability analysis because the non-severe impairments can later be considered at the RFC stage.") (collecting cases).

**D.      Whether the ALJ Properly Weighed the Medical Opinion Evidence.**

Plaintiff contends that the ALJ erred in assigning only limited weight to the opinions of treating physician Dr. Baker. When making a determination of disability, an ALJ must consider "all of the available evidence in the individual's case record[,]" including the opinions of medical sources. SSR 06-03p, 2006 WL 2329939, at *1 (Aug.

9, 2006).[5] The ALJ will consider the following factors for "every medical opinion [he or she] receive[s]": (1) whether the source examined the claimant; (2) whether the source is a treating source, and, if so, the length of the treatment relationship and frequency of examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence, "particularly medical signs and laboratory findings"; (4) the consistency of the opinion "with the record as a whole"; (5) whether the opinion is authored by "a specialist" and is "about medical issues related to his or her area of specialty"; and (6) other factors "which tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c); *accord* SSR 06-03p, 2006 WL 2329939, at *4-5.

Pursuant to the treating physician rule, an ALJ must decide "whether the opinion [of a treating physician] is entitled to controlling weight." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). It is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If the ALJ does not give a treating source opinion controlling weight, he or she must decide how much weight to give it by "explicitly" considering the following non-exclusive factors articulated in *Burgess*: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (alteration in original) (internal quotation marks omitted). "At both steps, the ALJ must give good reasons . . . for the weight [it gives the]

---

[5] SSR 06-03p was rescinded effective March 27, 2017. *See* Rescission of Soc. Sec. Rulings 96-2p, 96-5p, and 06-03p, Fed. Reg. 82, 15,263 (Mar. 27, 2017). Because Plaintiff filed her DIB and SSI applications prior to March 27, 2017, SSR 06-03p applies to her claims. *See id.* ("This rescission will be effective for claims filed on or after March 27, 2017."); *Harrison v. Comm'r of Soc. Sec.*, 2018 WL 3153399, at *3 n.4 (W.D.N.Y. June 28, 2018) ("SSR 06-03p has been rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, but remains in effect for claims filed before March 27, 2017.").

treating source's [medical] opinion." *Id.* at 96 (second and third alterations in original) (internal quotation marks omitted). However, "slavish recitation of each and every [factor]" is not required so long as "the ALJ's reasoning and adherence to the regulation[s] are clear[.]" *Rivera v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 486, 494 (S.D.N.Y. 2019) (internal brackets omitted) (quoting *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).

"An ALJ's failure to explicitly apply the *Burgess* factors when assigning weight" to a treating physician's opinion "is a procedural error" that is harmless only if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed[.]" *Estrella*, 925 F.3d at 96 (citations and internal quotation marks omitted). "Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Burgess*, 537 F.3d at 129-30 (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

Plaintiff contends that the ALJ erred in giving little weight to the opinions of her treating physician Dr. Baker with whom she had a long term treatment relationship. On November 23, 2015, Dr. Baker completed a Medical Source Statement in which he opined that Plaintiff was capable of lifting and carrying up to ten pounds frequently, sitting for thirty minutes at a time and standing and walking for fifteen minutes at a time. He checked off boxes indicating that Plaintiff could sit for a total of six hours per day, stand for a total of four hours per day, and walk for a total of three hours per day although she required the use of a cane to ambulate. He opined that Plaintiff had no restrictions on reaching, handling, fingering, or feeling but that she could only occasionally push and pull or operate foot controls. He indicated that Plaintiff should never balance, stoop, kneel, crouch, crawl, or climb stairs, ramps, ladders, or scaffolds.

On November 26, 2018, Dr. Baker completed a second Medical Source Statement in which he opined that Plaintiff was able to lift or carry less than five pounds occasionally and could stand or walk for fifteen minutes at a time for a total of 120 minutes in an eight-hour day. He indicated that Plaintiff required the use of a knee brace

and hand brace. Dr. Baker further opined that Plaintiff could reach, handle, and finger occasionally.

The ALJ gave Dr. Baker's opinions little weight, finding that they were not well supported or consistent with the medical evidence in the record. The ALJ acknowledged that Dr. Baker is "a long-term treating source" of Plaintiff and was thus "in the best position to have a longitudinal picture of [Plaintiff's] medical condition[,]" but he noted that his opinions were rendered on checklist style forms that did not reference objective medical evidence in the record. (AR 1473.) ALJ Merrill noted that the penmanship and the signatures were different between the two opinions but did not elaborate on why he found this noteworthy. He concluded that the significant limitations Dr. Baker endorsed were inconsistent with his own treatment notes in which he reported that Plaintiff walked with a normal gait, had normal motor strength, full range of motion in her lower extremities, and was alert and oriented with no signs of apparent distress.[6]

The ALJ further found that the opinions of Dr. Baker were inconsistent with the functional capacity assessment of state agency physician Cajsa Schumacher, MD ("Dr. Schumacher") who did not examine Plaintiff but whose opinion the ALJ gave great weight. In her November 30, 2017 functional capacity assessment, Dr. Schumacher opined that Plaintiff could occasionally lift and carry up to twenty pounds and frequently lift or carry ten pounds. She found that Plaintiff could stand or walk for a total of six hours in an eight-hour workday but that she must periodically alternate sitting and standing to relieve pain and discomfort and that she should be allowed hourly breaks of three-to-five minutes. Dr. Schumacher further opined that Plaintiff was not limited in her

---

[6] *See, e.g.*, AR 1145 (at March 24, 2015 examination, finding that Plaintiff had "no generalized swelling or edema of extremities" and was "neurovascularly intact globally with normal deep tension reflexes." Plaintiff's "mood and affect [were] described as [] normal."); AR 1908 (at December 15, 2017 examination, finding that Plaintiff "[w]alks with a normal gait[,]" her "[m]otor strength is intact[,]"she had "[f]ull ROM bilaterally" in her lower extremities and her, memory, judgment, and insight were all "grossly intact."); AR 2754 (at July 2, 2018 examination, finding that Plaintiff's "motor strength is intact[,]" had "full ROM bilaterally" in her lower extremities, was "alert and oriented[,]" and "walk[ed] with a normal gait."); AR 2759-60 (at September 12, 2018 examination, finding the same).

ability to push and/or pull, stoop, kneel, crouch, or balance and that she could frequently crawl and climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds.

"Courts in this Circuit long have casted doubt on assigning significant weight to the opinions of consultative examiners when those opinions are based solely on a review of the record." *Soto v. Comm'r of Soc. Sec.*, 2020 WL 5820566, at *7 (E.D.N.Y. Sept. 30, 2020) (citations omitted). This is particularly true where the opinion of a non-examining medical expert is given more weight than that of a treating physician. *See Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) (holding that "[a] corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis."); *Piorkowski v. Comm'r of Soc. Sec.*, 2020 WL 5369053, at *2 (E.D.N.Y. Sept. 8, 2020) (holding that "in the face of a treating physician's opinion, the general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.") (internal quotation marks, alteration, and citation omitted).

While an ALJ is entitled to choose between properly submitted medical opinions, inconsistency with the opinion of a non-examining state agency consultant alone was not a "good reason" for affording Dr. Baker's opinion less than controlling weight. This error was not harmless because ALJ Merrill neglected to include any meaningful limitations in the RFC based on Plaintiff's obesity and need for a cane or knee brace. *See Suarez v. Astrue*, 996 F. Supp. 2d 327, 332 (E.D. Pa. 2013) (holding that "[b]y identifying obesity as a severe impairment, the ALJ acknowledged that it had more than a minimal impact upon [claimant's] ability to do basic work activities" and therefore "the extent to which it does impact her abilities must be discussed"); *Rowe v. Berryhill*, 2018 WL 4233702, at *4 (W.D.N.Y. Sept. 6, 2018) (holding that "[w]hen use of a hand-held assistive device is medically required, the ALJ must consider its impact on the claimant's RFC. Failure to do so warrants remand.").

With regard to Plaintiff's mental health impairments, Dr. Baker indicated in his November 2015 opinion that Plaintiff's pain interfered with her ability to maintain

17

attention and concentration between 34%-100% of the time, and that her impairments and treatment would cause her to be absent from work more than two days per month. In his November 2018 opinion, he stated that Plaintiff would have difficulty concentrating more than 15% of the day and that her conditions would cause her to miss work ten days per month. Dr. Baker also indicated that these conditions had existed since "at least as early as January 2015[.]" (AR 2873.)

The ALJ did not credit Dr. Baker's opinion that Plaintiff's attention and concentration would be frequently or constantly affected by her symptoms because "the record regularly describes [Plaintiff's] attention, concentration, and cognitive function as being intact." (AR 1474.) The ALJ cites to treatment notes from multiple sorces who found Plaintiff's concentration "intact" during various appointments. However, the Second Circuit has "cautioned ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions." *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 10 (2d Cir. 2020). This is because "Plaintiff's presentation at primary care appointments reveals relatively little about her overall mental health condition because the appointments only constitute 'snapshot[s]' at single moments in time." *Jennifer W. v. Comm'r of Soc. Sec.*, 2020 WL 549357, at *13 (D. Vt. Feb. 4, 2020) (citation omitted).

Indeed, the same sources relied on by the ALJ also concluded that Plaintiff suffered from PTSD, had difficulty concentrating, and had mental impairments that imposed job related restrictions.[7] "It would be improper to rely on these mental status evaluations to conclude that [Plaintiff] is capable of prolonged concentration while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations." *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 11 (2d Cir. 2020).

---

[7] *See, e.g.*, AR 962 (assessment by Barbara Laird, finding attention/concentration to be "intact" but still diagnosing Plaintiff with PTSD and Anxiety Disorder and noting that Plaintiff has "racing thoughts, anxiety, PTSD, - has to overcome symptoms of these to function every day"); AR 1911 (assessment by Adelaid J. Salley, LICSW, noting that "[c]oncentration is normal" but diagnosing Plaintiff with PTSD); AR 2885-86 (assessment by B. Amber Rand, MSN, PMHNP-BC, APRN, noting that Plaintiff's attention span and concentration were "within normal limits" but diagnosing her with PTSD and noting that Plaintiff had a moderate impairment in work performance).

Plaintiff's ability to concentrate during a brief medical appointment does not negate the conclusion that she could not concentrate for a prolonged period of time during an eight-hour work day. Here, the ALJ "substitute[d] his own expertise or view of the medical proof for the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

The ALJ did not credit Dr. Baker's further opinion that Plaintiff would likely miss multiple days of work per month due to her mental impairments because he noted that Plaintiff was able to attend her medical appointments. However, "[t]he Plaintiff's ability to attend medical appointments and engage in other daily activities of limited duration do not correlate to the Plaintiff's ability to stay on-task during an eight-hour work day or the likelihood that [s]he would miss work several days per month[.]" *Patrick M. v. Saul*, 2019 WL 4071780, at *10 (N.D.N.Y. Aug. 28, 2019) (footnote omitted); *see also Melanie M. v. Berryhill*, 2019 WL 3852699, at *19 (D. Vt. Aug. 16, 2019) (holding that "[p]laintiff's ability to do some light chores, visit family members, and attend medical appointments does not indicate that she can work full time."). Instead, Plaintiff's attendance at medical appointments is consistent with Dr. Baker's assessment that she would need to miss several days of work per month, in part to attend those appointments.

For the foregoing reasons, the ALJ did not give "good reasons" for refusing to accord controlling weight to Dr. Baker's opinions that Plaintiff would have difficulty concentrating and being on task more than 15% of the time due to her impairments and would likely miss multiple days of work per month. This error was not harmless because VE Lynn Balsam testified that full time employment would customarily tolerate only one absence from work per month and no more than 10% time off-task in an eight-hour work day. The overwhelming evidence supports a conclusion that Plaintiff's absences from work and time off-task would exceed those limits.

### E.    Whether Remand for the Calculation of Benefits Is Warranted.

Plaintiff seeks a remand for a calculation of benefits, arguing that the medical record provides persuasive proof that she was disabled. Remand for the calculation of benefits is appropriate in cases where there is "no apparent basis to conclude that a more

19

complete record might support the Commissioner's decision[.]" *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999); *see also Jennifer W.*, 2020 WL 549357, at *19 (holding that "[s]ince there is no apparent basis to conclude that a more complete record might support the Commissioner's decision, the court will remand for calculation of benefits.").

A treating physician's opinion in this case was supported by substantial evidence and thus was entitled to controlling weight in the absence of "good reasons" which were not provided. Had the ALJ followed the Appeals Council's remand order regarding Dr. Mooney and afforded Dr. Baker's opinion controlling weight, he would have been compelled to reach the conclusion that Plaintiff's impairments rendered her disabled because she was unable to satisfy the demands of full time work. *See Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999) (remanding for a calculation of benefits where "the records provided persuasive evidence of total disability that rendered any further proceedings pointless."); *see also Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (remanding for calculation of benefits where there was an "infinitesimal likelihood that employment of any kind would be available" to plaintiff). A remand for calculation of benefits is therefore warranted.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion for an order reversing the decision of the Commissioner (Doc. 11), DENIES the Commissioner's motion to affirm (Doc. 15.), and REMANDS the case for a calculation of benefits. SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th day of January, 2021.

Christina Reiss, District Judge
United States District Court